## Di Marco v. Bloomfield Park Land Company et al.

*Vendor and vendee—Bill to recover money deposited on account of purchase of land—Allegation of fraud in inception of contract.*

Where an executory contract for the purchase of land contains a clause to the effect that no verbal agreement or written alterations will be recognized, and another clause authorizes the vendor to cancel the contract and retain all moneys paid on account as liquidated damages, a bill in equity by the vendee to recover the deposit money, which had been declared forfeited as liquidated damages by reason of failure to make the payments required by the contract, based upon allegations of fraud in that the vendor's agent had connived to induce the vendee to part with the deposit money on account of the purchase, although the agent and the vendor well knew that the vendee was financially unable to meet the payments required of her by the contract as and when the same became due, and that she had been induced to sign the contract jointly with the vendor's agent as an individual through the fraudulent misrepresentations made by him, ratified by the vendor, who adopted his acts as its agent and accepted the fruits thereof, and that the origin, purpose and design of the contract procured from the vendee was to provide a device for forfeiting the money paid on account, will be dismissed in the absence of averments of specific facts and circumstances to support the charges.

Demurrer to bill in equity. C. P. No. 5, Phila. Co., Sept. T., 1924, No. 6601.

*Frank L. Shallow*, for plaintiff; *A. T. Ashton*, for defendants.

MARTIN, P. J., July 7, 1925.—The bill avers that by agreement in writing the Bloomfield Park Land Company, one of the defendants, agreed to convey to plaintiff and M. G. Montrezza, also a defendant, 100 building lots situated in Camden County, New Jersey, the location of which was indicated on a map made part of the agreement. The consideration was $2000 in cash when the agreement was executed and monthly instalments until the sum of $17,500 was paid.

The contract contained a clause, "No verbal agreements or written alterations recognized;" and it was agreed that if any payment provided for in the contract was not paid when due, the land company had the option, on ten days' notice to the purchaser, to cancel the contract and retain all moneys paid as liquidated damages.

On the following day the Bloomfield Park Land Company, Herman Balaban and Harry Bernstein, all of whom are defendants,. agreed in writing to sell to plaintiff and M. G. Montrezza other lots described in the contract, located in Camden County, New Jersey, as indicated on a map filed in the Clerk's Office of Camden County. The purchasers agreed to pay $2000 in cash and instalments upon the dates stipulated in the agreement until the consideration money amounted to $17,500. It is averred that, in response to an inquiry made by plaintiff contemplating a purchase of lots, Ferraro, a representative of the Bloomfield Park Land Company, called upon plaintiff and accompanied her to view the land. Plaintiff and Ferraro called at the office of the company, where she was introduced to Montrezza, one of the defendants, who, Ferraro stated, was the attorney for the defendant company, and Montrezza accompanied her and Ferraro to visit the land.

After an inspection, plaintiff and her brother agreed to purchase from the land company eight lots for the price of $2300, to be paid in instalments of $48 monthly; three lots for the price of $2100, to be paid in instalments of $20 a month; and four lots for $1400, to be paid for in instalments of $20 a month. In effecting these sales to plaintiff, Montrezza acted as the authorized agent of the company, and it is alleged by plaintiff that he falsely represented himself to be an attorney-at-law. She avers that her command of the English

language was limited, and in transacting the business she was obliged to depend upon Montrezza, who was conversant with the English as well as Italian language.

The written contract for the purchase of the first 100 lots was brought by Montrezza to the home of plaintiff in the printed form of contract used by the Bloomfield Park Land Company, filled up to provide for the conveyance by the land company to plaintiff and Montrezza of 100 building lots, numbered in red on a plan of the operation, attached and made part of the contract. At the time the contract was presented to plaintiff for signature it had been signed by Montrezza and Balaban for the Bloomfield Park Land Company.

The bill avers that, prior to the execution of the agreement, Montrezza submitted to plaintiff a proposition for the purchase of the 100 lots in conjunction with himself, and represented that he had secured from Balaban and Bernstein, representing the land company, a concession that these lots would be sold to plaintiff for $175 each, instead of $245, if plaintiff and Montrezza agreed to pay an initial payment of $5000, a second payment on June 1, 1924, of $5000, and a third payment on Oct. 5, 1924, of $7500, making a total of $17,500 instead of $24,500, which Montrezza represented to be the regular price. Montrezza agreed to put up $2500 of the initial deposit of $5000, plaintiff to put up the balance of the first payment. Montrezza represented that these lots would be sold for $300 in March, April or May, 1924, which would result in a profit being derived to the plaintiff of about $12,500. On Nov. 17, 1923, Montrezza accompanied plaintiff to the Postal Savings Bank, where she withdrew $2000 of her savings, returned to her home with Montrezza, and two days later paid to Montrezza the $2000 in cash, and he delivered to her the contract for the purchase of the 100 lots. Upon informing Montrezza that she could raise only $2000 instead of $2500 required as her one-half of the $5000 initial payment, Montrezza stated that he would supply the other $500, and later informed her that he had arranged to have the Bloomfield Park Land Company accept $2000 and extend the time to June, 1924, before the next payment would be required on the contract, and assured her "that by that time all or a great part of the lots would have been disposed of and the plaintiff and the aforesaid Montrezza would then be able to meet the payments of the June instalment, as well as subsequent instalments." The bill avers "that, relying on the representations of the aforesaid Montrezza with respect to the payment of the balance required on the $17,500 contract which she joined the aforesaid Montrezza in signing, she surrendered and gave to the aforesaid Montrezza the $2000."

On or about Dec. 5, 1923, Montrezza called at the house of plaintiff and produced for her signature a typewritten agreement of sale signed for the Bloomfield Park Land Company by H. Balaban and H. Bernstein, two of the defendants, as owners, who were designated in the agreement as the parties of the first part, the parties of the second part being Montrezza and the plaintiff. Montrezza and plaintiff signed this agreement. By its terms they agreed to purchase 100 lots for $17,500, the first payment of $2000 to be made in cash on the signing of the agreement, and the balance in six monthly payments of $500 each, a payment of $5000 and a final payment of $7500. This contract was executed on Dec. 5, 1923, although it was dated on Nov. 20, 1923. Plaintiff avers that when the contract was signed, Montrezza represented that the execution of the same was a mere formality, and was desired by his associates because . . . Montrezza was about to embark on a trip to Italy; that she need give herself no concern about the payments during the first six months of 1923, as Montrezza had arranged with his associates, who had signed the

contract and delivered it to him for plaintiff's signature, that no demand would be made upon her for any of these payments during Montrezza's absence, and that it was understood by and between Montrezza and his associates, Balaban and Bernstein, that such payments were never actually contemplated or expected, but that it was the understanding that Montrezza would take care of the necessary payments to equal the $2000 appropriated to the contract by the plaintiff upon his return from Italy and before the $5000 payment would be due on the contract of Nov. 19, 1923, as agreed upon June 1, 1924, and that Montrezza would have disposed of the properties for their mutual profit.

Relying upon the representations and statements of Montrezza, the agent of the land company, the plaintiff then and there signed the agreement dated Nov. 20, 1923. Montrezza departed for Italy on Dec. 8, 1923, and on Jan. 3, 1924, and Jan. 17, 1924, plaintiff received from defendant company the first and second notice calling for payment of the $500 on account of the January instalment provided for in the contract of Nov. 20, 1923. In response to a notice, plaintiff called at the office of the company, explained her inability to make payment, recited the facts surrounding the execution of the contract, and requested the company to wait until Montrezza returned from Europe. This request was refused, and Balaban asserted that Montrezza said nothing to him concerning the contract or its provisions for instalment payments. Plaintiff was informed that unless payment was made of the amounts due, defendant would cancel the contract. On Feb. 18, 1924, Montrezza returned from Europe, resumed his connection with the company and continued his relationship until June 15, 1924. The bill avers that plaintiff, through counsel, has consulted and advised with Montrezza and the defendant company, "looking to an equitable adjustment or for a return of her money, but that she has been unable to secure any satisfactory or equitable adjustment." Wherefore, she avers that Montrezza connived to induce her to part with $2000 paid on the premises; "that all of the defendants well knew that the plaintiff was financially unable to meet the payments required of her in the contract as and when the same became due; that she was induced to sign the contract jointly with the aforesaid Montrezza through the fraudulent misrepresentations made by him; that the Bloomfield Park Land Company has ratified and adopted all of the acts of the aforesaid Montrezza, their agent, and has accepted and retained the fruits thereof; that the origin, purpose and design of the contract procured with her on Dec. 5, 1923, was to provide thereby a device for the forfeiting by the company of the $2000 which their agent had received on account of the contract dated Nov. 19, 1923." The bill prays for a decree that the land company or Montrezza be required to pay plaintiff $2000 which they hold by virtue of the cancellation of the contract, and for general relief.

Defendant demurred to the bill of complaint on the ground, among others, that plaintiff has failed to show in the averments of the bill any cause entitling her to the relief prayed for.

There is no allegation that the properties which plaintiff and Montrezza purchased from the land company were not of the value which they agreed to pay, nor is there an allegation that the land company were not the owners of the property and qualified to make the conveyance.

The terms of the contracts of sale were specific, required the vendees to pay the price stipulated, and provided for forfeiture of the agreement and retention of purchase money paid on account as liquidated damages in the event of default.

Di Marco v. Bloomfield Park Land Company et al.

The averments that Montrezza "connived to induce the plaintiff to part with the sum of $2000 paid by her on account of the premises, that all of the defendants well knew that plaintiff was financially unable to meet the payments required of her in the contract as and when the same became due," and that she was induced to sign the contracts jointly with Montrezza "through the fraudulent misrepresentations made by him," ratified by the Bloomfield Park Land Company, who adopted his acts as their agent and accepted the fruits thereof, and "that the origin, purpose and design of the contract procured with her on Dec. 5, 1923, was to provide thereby a device for the forfeiting by the company of the $2000 which their agent had received on account of the contract," are not sufficient, in the absence of specific facts or circumstances supporting the charges, to entitle the plaintiff to equitable relief against defendants.

The contracts appear to be valid agreements in form. There is no averment in the bill that the land which plaintiff inspected before signing the agreements is not in existence, or that the failure of Montrezza to effect a sale of the lots which he and plaintiff purchased in time to aid in financing the agreements was a fraud perpetrated by defendants or in which they participated.

Plaintiff may be entitled to bring an action at law against Montrezza for breach of contract in failing to keep his part of the bargain; but the averments of the bill of complaint, so far as they relate to the other defendants, describe nothing more than the execution of contracts by plaintiff which she was unable to perform.

Demurrer sustained.